### McFADDEN et al. v. UNITED STATES (two cases).
### Nos. 18624, 19830.

District Court, E. D. Pennsylvania.
Aug. 18, 1937.

Barnes, Biddle & Myers and Charles Myers, all of Philadelphia, Pa., for petitioners.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and. F. J. Neuland, Atty., Dept. of Justice, of Washington, D. C., for the United States.

Sur Pleadings and Proofs.

MARIS, District Judge.

These two suits were instituted by the executors of the will of George McFadden, deceased, against the United States for the refund of a portion of the estate tax paid by the petitioners and which they claimed was in excess of the amount legally due. The cases involved the same facts, and were consolidated for trial by this court. They will both be disposed of in this opinion. From the evidence I make the following special

### Findings of Fact

The petitioner's decedent, George McFadden, died January 5, 1931, as the result of an accident. He was then fifty-seven years and eight months of age, in vigorous health for a man of his age, and actively engaged in directing a large business. His will was probated January 12, 1931, in Delaware county, Pennsylvania, and letters testamentary were grant-

ed thereon to the petitioners who are still acting as such.

Petitioners filed their estate tax return on January 5, 1932. The return disclosed the amount of decedent's gross estate to be $5,270,701.05. The total deductions claimed were $452,165.11, leaving a net estate subject to tax of $4,818,535.94. The total estate tax shown to be payable was $478,095.03. The petitioners claimed credit for state estate, inheritance, legacy, or succession taxes paid of $382,476.02. The balance of estate tax payable to the United States was $95,619.01. $3,429.05 of this amount was paid to the Collector of Internal Revenue at Philadelphia. on June 2, 1932, and the balance of $92,189.96 was paid to the acting collector on June 22, 1932.

In the estate tax return, under the heading of "Transfers," petitioners made the following statement: "Decedent on February 9, 1928, created a trust, with Girard Trust Company of Philadelphia as Trustee. Decedent within two years of death transferred to the trust, in addition to the property covered thereby at the date thereof, certain securities or funds and as the transfers thereof were not made in contemplation of death no part of the value of said securities is returned for taxation. Decedent, being in full health, died suddenly from accidental electric shock. As that part of the Revenue Act of 1928, requiring all property transferred within two years to be returned for taxation, has been declared unconstitutional by various Federal Courts and the Board of Tax Appeals, it is not deemed necessary to return for taxation any of the property held by the trust. A copy of the deed of trust is submitted as part of this return." In said return, under the heading "Debts of Decedent," petitioners claimed as a deduction a note of George McFadden to George McFadden, Ella L. Browning, Barclay McFadden, and Girard Trust Company, trustees under the will of George II. McFadden, deceased, dated November 18, 1927, for $250,000, with interest of $2,000 accrued thereon from November 18, 1930, to January 5, 1931.

On May 8, 1934, the Commissioner of Internal Revenue sent petitioners a letter advising them that he had determined a deficiency of $534,433.76 in the federal estate tax liability of decedent's estate. This resulted from his action in including in decedent's gross taxable estate the value of the property comprising the trust held by the Girard Trust Company as trustee which had been created by decedent by deed of trust dated February 9, 1928, and also by disallowing as a deduction the note for $250,000 and interest of $2,000 accrued thereon, above referred to.

Thereafter petitioner submitted to the Commissioner evidence of payment of state estate, inheritance, legacy, or succession taxes in the aggregate amount of $382,476.02, the amount disclosed in the estate tax return as filed, credit for which was allowed by the Commissioner, resulting in a net deficiency of $151,957.74. No petition was filed with the United States Board of Tax Appeals for redetermination of this deficiency. On July 24, 1934, 20 per cent. of the net deficiency, $30,391.54, and interest thereon of $4,626.17, was assessed, and the total sum, $35,017.71, was paid to the Collector of Internal Revenue at Philadelphia on August 22, 1934.

Upon payment of this portion of the deficiency and interest there still remained outstanding and unpaid 80 per cent. of the deficiency amounting to $121,566.20, which represented the credit for state estate, inheritance, legacy, or succession taxes under section 301(b) of the Revenue Act of 1926, 44 Stat. 69, payable to the State of Pennsylvania. This remaining deficiency, together with interest thereon, was assessed against petitioners by the Commissioner in December, 1934. In March, 1936, petitioners made application for an extension of time for the payment of this balance, and under date of May 20, 1936, the Commissioner granted an extension until June 28, 1937. Thereafter a further extension of time was granted for payment thereof pending a final decision of these cases.

On September 20, 1934, petitioners filed with the acting collector of internal revenue a claim for the refund of $40,895.52, representing alleged overpayment of estate tax with interest thereon. This claim for refund was made on the ground that the Commissioner erred in including in the decedent's taxable estate the property included in the trust created by decedent in his lifetime and held by the Girard Trust Company as trustee and in refusing to allow the deduction of $252,000 for the note and interest above mentioned. There were also other errors alleged which the parties afterwards agreed upon and which are not

involved in these cases. The Commissioner did not act upon this claim for refund within six months, whereupon petitioners on May 2, 1935, brought the suit in No. 18624 to recover the amount claimed upon the grounds alleged in the claim for refund.

On December 4, 1936, petitioners filed with the Collector of Internal Revenue a further claim for refund of $35,607.07, representing estate taxes alleged to have been overpaid. This claim for refund was based upon the same grounds set forth in the first claim and in addition thereto upon the ground that certain corporate stocks included in the trust fund above referred to had not been transferred to the trustee by the decedent but by his wife Josephine B. McFadden. This claim for refund was rejected by the Commissioner on March 1, 1937, whereupon petitioners brought the suit in No. 19830 to recover the amount claimed upon the grounds alleged in the second claim for refund.

The two suits were consolidated for trial by order of this court, and at the trial the parties filed the following stipulation:

"1. The issues in the above causes are identical, except the issue raised by Paragraph 13 of the Petition in Cause No. 19830 and respondent's Answer thereto.

"2. Petitioners agree to eliminate from Cause No. 19830 for purposes of trial the issues in the above causes which are identical, to wit, all issues except those raised by Paragraph 13 of the petition in Cause No. 19830 and respondent's Answer thereto.

"3. In computing the amount of any judgment to be entered for plaintiffs in Cause No. 19830, there shall be excluded the amount of any item included in any judgment entered for the plaintiffs in Cause No. 18624 based upon an issue which is duplicated in Cause No. 19830 and which has been eliminated for purpose of trial as indicated in Paragraph 2 hereof."

On or about February 9, 1928, the decedent executed a deed of trust to Girard Trust Company as trustee, whereby he conveyed and thereafter transferred to the trustee property having a value at the date of his death of $983,070.89. The deed of trust directed the trustee to collect the income and "during the lifetime of George McFadden to pay the net income to and among Josephine, wife of George McFadden, George, Caroline, Emily and Alexander, children of George McFadden,

and the child or children of any of said four children of George McFadden as hereinafter provided, or to any one or more of his said wife, his said children, and their children, in such shares, proportions or amounts as shall from time to time be directed in writing by George McFadden to the Trustee, with like effect as if said directions were specifically set out herein, and in default of such direction equally to and among his said wife and his said four children, or the child or children of any deceased one of such four children, such child or children taking their parent's share by representation and per stirpes; in trust, upon the death of George McFadden to pay over the net income in equal shares or parts to his wife, Josephine, so long as she shall not remarry, and to his said four children, or such of them as shall be living at the death of George McFadden, for and during their natural lives, respectively, and to the child or children of any deceased one of the four children of George McFadden until such child or children shall respectively reach the age of twenty-one years, such child or children being entitled to receive and to take their parents' share by representation and per stirpes;" There were further limitations upon the death of decedent's wife and children. The deed authorized decedent to appoint new trustees and expressly provided that it should be unalterable and irrevocable. It was, however, not joined in by decedent's wife and, therefore, a second deed of trust bearing the same date and identical in terms except for the joinder of decedent's wife was executed three months later.

The property transferred to the Girard Trust Company as trustee under these deeds of trust was not transferred by the decedent in contemplation of his death, nor were the transfers intended to take effect in possession or enjoyment at or after his death. The enjoyment of none of the property so transferred was subject at the time of decedent's death to any change through the exercise of a power, either by the decedent alone, or in conjunction with any person, to alter, amend, or revoke.

Included in the property transferred to the Girard Trust Company, as trustee under the deeds of trust, were certain shares of corporate stocks having a value at the date of decedent's death of $34,077.87. These shares when transferred were the property of decedent's wife Josephine B. McFadden and the certificates therefor

were registered in her name and were indorsed by her for transfer to the trustee.

George H. McFadden, decedent's father, died October 16, 1926, in Philadelphia. He left a will probated in Philadelphia county, of which Girard Trust Company, George McFadden, the decedent, Ella L. Browning, and Barclay McFadden were executors and trustees. George H. McFadden's will authorized his trustees "to lend to each of my sons a sum or sums in the aggregate not exceeding one-third of the original share from which such son was entitled to receive the income at the time of my death, before the payment to him absolutely of one-third of his shares as hereinbefore provided for in this my Will. Said loans shall be made without security and shall bear interest at the rate of six per cent per annum. The right to receive said loan shall be absolute in each of my sons and not subject to the discretion of my Trustees. The loans may be for such duration and with such privilege of renewal or extension as such son shall request. The interest and principal of such loans shall be charged against each son and his descendants in distribution, both as to principal and income, in like manner except as to the amount of interest as the amounts paid to my sons at the time of my death and herein more specifically set forth."

It further provided:

"In the event of the death of any child of mine without leaving descendants him or her surviving, or in the event of the death of all of the descendants of any child of mine before the period fixed for distribution, thereby making impossible the charging to the share otherwise passing ultimately to his or her descendants, of such loans as may be made by my Trustees hereunder, I direct that such loans shall not be cancelled by my Trustees, but be as far as possible collected from the estate of the child so dying without descendants or whose descendants shall all die prior to the period fixed for distribution. My Trustees, however, shall make no claim for any such loan against the estate of any child of mine who dies leaving descendants surviving, and I expressly exonerate my said Trustees from responsibility in the event of loss to my estate in case of such descendants subsequently dying before the period fixed for distribution at a time when such child's estate may have been fully distributed and recourse thereto lost.

This obligation to collect said loans made by my Trustees shall only be exercised in favor of my other children and their descendants.

"In the event of the death of all of my children without descendants living at the time of the final distribution of my estate, said loans shall be cancelled by my Trustees, and, if collected prior thereto, shall be repaid to the estate of the child from which such loan was collected.

"In the event of the death of all of my children without any descendants living at the time of final distribution of my estate, I give, devise and bequeath one-half of my residuary estate to the descendants then living of my brothers John Howard McFadden and J. Franklin McFadden, in equal shares, per stirpes, upon the principle of representation. The remaining one-half of my residuary estate I give, devise and bequeath unto the Girard Trust Company, In Trust, to pay the income half-yearly to the Trustees of the University of Pennsylvania for the use of the University Hospital."

Pursuant to the authority given them by the will of George H. McFadden, his trustees made a loan or advance to decedent on November 18, 1927, of $250,000, and in consideration thereof decedent gave the trustees a note for that amount payable one year after date with interest at the rate of 6 per cent. per annum. A similar loan or advance was made at the same time to decedent's brother Barclay McFadden. Decedent and his brother, as well as the estate of his father George H. McFadden, were partners in the firm of George H. McFadden & Brother. These advances were accomplished by transferring $500,000 from the capital account of the estate of George H. McFadden in the firm to the capital account of the decedent and his brother in the same firm, each being credited with one-half of the amount, or $250,000. Immediately prior to the receipt of this advance the decedent's interest in the firm was $4,074,694.12, and after the receipt of the advance his interest in the firm amounted to $4,324,694.12. From that date to the time of his death the value of his interest was never less than that amount, and at the date of his death it amounted to $4,538,520.63. Decedent paid to the trustees under his father's will interest on this advance semiannually on May 18th and November 18th. At the time of his death interest in the amount of $2,000 had ac-

crued thereon. This interest together with interest accruing thereafter was subsequently paid by petitioners.

Decedent left surviving him four children; two sons, George H. McFadden, Jr., and Alexander B. McFadden, and two daughters, Caroline B. Ewing and Emily B. Harrison. No part of the principal of the note of $250,000 has been paid by petitioners to the trustees of the estate of George H. McFadden, deceased.

Petitioners filed their accounts as executors of decedent's will in Delaware county, Pennsylvania, and at the audit of this account by the orphans' court the claim of the trustees under the will of George H. McFadden for the amount of the note of $250,000 was presented and allowed and the amount thereof together with interest from May 18, 1932, was awarded to the trustees.

Certain other facts which may be material to the issues raised in these suits are set forth in the stipulations and supplemental stipulation of facts filed herein by the parties which are incorporated herein by reference.

## Discussion.

These cases involve but two questions. The first is whether the corpus of the trust created by George McFadden on February 9, 1928, should be included in his gross estate for estate tax purposes. The second question is whether the amount of the note given by the decedent to the trustees of his father's estate to cover an advance made by them to him under the terms of his father's will should be allowed as a deduction in determining the amount of his net estate subject to estate tax. I will consider first the question involving the trust fund.

Section 302(c) and (d) of the Revenue Act of 1926, 44 Stat. 70, are as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

It will be seen that the act requires property transferred in trust by a decedent to be included in his gross estate if (a) the transfer was made in contemplation of death, or (b) it was intended to take effect in possession or enjoyment after death, or (c) the enjoyment thereof was subject at the date of death to any change through the exercise of a power either by the decedent alone or in conjunction with any person to alter, amend, or revoke. We must, therefore, determine whether the transfer in trust here involved comes within any one of these three categories. If so, the action of the Commissioner in including the trust corpus in decedent's estate was correct.

Was the transfer made in contemplation of death? In considering this question I note that while the deed of trust was executed more than two years before the decedent's death, a considerable part of

the trust corpus was transferred within that period. We have seen that the statute expressly provides that so much of the property transferred within two years as exceeds $5,000 shall be deemed to have been transferred in contemplation of death. This provision, however, has been held unconstitutional by the Supreme Court (Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772), and need concern us no further. The question, therefore, resolves itself into one of fact and the determinative factor is to "be found in the transferor's motive." United States v. Wells, 283 U.S. 102, 117, 51 S.Ct. 446, 451, 75 L.Ed. 867. In that case the Supreme Court said (at pages 117, 118 of 283 U.S., 51 S.Ct. 446, 451, 452, 75 L.Ed. 867): "Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * * The question, necessarily, is as to the state of mind of the donor. * * * If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos, which spring from a different motive." In the present case the testimony of decedent's counsel and business associates made it quite clear that his action in setting up the trust was not motivated by the thought of death. On the contrary, it was carried through pursuant to his desire to remove a portion of his property from the hazards of his business in order to make an assured provision for his family in the future. He was an active business man under sixty years of age and in vigorous health. It is quite clear that his action was not in contemplation of death, and I have so found.

■ Was the transfer intended to take effect in possession or enjoyment at or after decedent's death? It will be observed that the decedent reserved no beneficial interest in himself during his lifetime, but merely the right to direct the division of the income during that period among his wife and children. But even if he had reserved a complete life estate for himself, the transfer could not have been held to have been intended to take effect at or after his death. May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412. A fortiori, where he had parted with all beneficial interest at the date the deed was executed.

The Government points out, however, that on the same day that decedent executed the original deed of trust he also executed a will, which was subsequently revoked, and that when he requested his wife to execute the second trust deed she conferred with her attorney as to her statutory rights as his wife and as to whether the provisions made for her benefit in the deed were equal to what she would be entitled to under the laws of Pennsylvania. From this the Government would have me conclude that the decedent and his wife discussed the terms of the trust and she understood that he was setting aside for the maintenance, support, and enjoyment of herself and her children property with a value at least equal to her statutory share of his estate. This conclusion does not follow from the facts referred to, however. Even if it were true that the deed of trust did provide her with an interest in the trust fund equivalent to her statutory dower, it also appears that the trust corpus was less than one-fifth of decedent's entire estate. Obviously, even if the entire fund had been devoted exclusively to Mrs. McFadden's benefit, it would not have provided her with her statutory one-third interest in decedent's estate. It thus becomes doubly clear that the creation of the trust fund was not in furtherance of a family arrangement which was in reality testamentary in character. It must be held that it was not intended to take effect in possession or enjoyment at or after death.

The Government argues, however, that the trust fund was taxable because the enjoyment of it was subject at the date of decedent's death to a change through the exercise of a power by the decedent to alter, amend, or revoke. I think it is a sufficient answer to this contention to point out that the right which the decedent reserved was to direct the shares of income to be paid to his wife and children *during his lifetime only*. The shares of those who were to take income and principal after his death were definitely fixed and vested by the provisions of the deed of trust at the time it was executed. It thus becomes clear that at the date of his death the enjoyment of the trust property was not subject to any change by the decedent since his power to change related only to distributions made during his lifetime and automatically terminated at his death.

In this respect the present case is clearly distinguishable from Porter v. Com-

missioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880, and the other cases upon which the Government relies. In each one of these cases which I have examined it appears that the donor reserved some power by the exercise of which he might affect the interests of those who took after his death. In such a case it is obvious, as the Supreme Court pointed out in Porter v. Commissioner, supra, that the donor's death terminated his control, ended the possibility of any change by him, and was in respect of title to the property the source of valuable assurance passing from the dead to the living. In the present case, as I have pointed out, no such assurance passed upon the death of the decedent for he had already given that assurance in the fullest possible form when he executed the deed of trust without reserving any power to change the interest of any party taking after his death.

But even if the decedent had reserved a power to change the shares of income which his wife and children should receive after his death, this alone would appear not to be such a power to alter or amend as the statute contemplates. Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76. It follows that the corpus of the trust was not required by any of the provisions of section 302 of the Revenue Act to be included in decedent's gross estate and the action of the Commissioner of Internal Revenue in so including it was erroneous.

This conclusion makes it unnecessary to consider further the contention of the petitioners in the suit in No. 19830 that certain of the stocks transferred to the trust belonged not to the decedent but to his wife. I have found this to be the fact, but since the entire refund to which the petitioners are entitled may be recovered by them in the suit in No. 18624, they will not be entitled under the stipulation into which they have entered to a finding in their favor in the second suit.

There remains for our consideration the second question involved in the cases, namely, whether the petitioners are entitled to deduct, in computing decedent's net estate, the note of $250,000 which he gave to his father's trustees and the accrued interest thereon. Petitioners contend that the deduction is authorized by section 303(a) of the Revenue Act of 1926, 44 Stat. 72, the provisions of which are as follows:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth. * * *

"(2) An amount equal to the value of any property (A) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, or (B) transferred to the decedent by gift within five years prior to his death, where such property can be identified as having been received by the decedent from such donor by gift or from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. This deduction shall be allowed only where a gift tax imposed under the Revenue Act of 1924, or an estate tax imposed under this or any prior Act of Congress was paid by or on behalf of the donor or the estate of such prior decedent as the case may be, and only in the amount of the value placed by the Commissioner on such property in determining the value of the gift or the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate and not deducted under paragraph (1) or (3) of this subdivision.''

It will be noted that the act authorizes the deduction, inter alia, of (a) claims against the estate and (b) of property forming a part of the gross estate of any person who died within five years prior to the death of the decedent where such property can be identified as having been received by the decedent from such prior decedent by gift, bequest, devise or inheritance, and provided that an estate tax was paid thereon by the estate of such prior decedent. The question for determination is whether the item under dis-

cussion comes within either of these two classes.

An examination of the father's will discloses that he authorized his trustees to lend certain sums to his sons and provided that the loans should bear interest at the rate of 6 per cent. per annum. He further provided, however, that the loans were to be made without security and were to be for such duration and with such privilege of renewal or extension as his son should request. He also provided that: "The interest and principal of such loans shall be charged against each son and his descendants in distribution, both as to principal and income, in like manner except as to the amount of interest as the amounts paid to my sons at the time of my death and herein more specifically set forth." In furtherance of his purpose he directed that his trustees should make no claim for any such loan against the estate of any child of his who died leaving descendants surviving. Only in case of the death of a son without living descendants, so that under the other terms of the will he would not participate in distribution of the principal of the estate, were the trustees directed to collect a loan from the son's estate. There were other provisions exonerating his trustees from responsibility in the event of loss in connection with these loans and providing that the obligation to collect them was only to be exercised in favor of his other children and their descendants.

■ From a careful consideration of all the provisions of the will, I am clear that what the testator intended to authorize was not the making of loans to his sons, but rather the making of advances to them on account of the principal of his estate ultimately distributable to their descendants. The provision for interest was evidently intended to equalize distribution of income to the other beneficiaries, and the provision for collection from the estate of a son dying without surviving issue was clearly necessary in order to preserve the scheme of his will which provided that the entire principal at the death of his last surviving child should be distributed per stirpes to the descendants of his deceased children.

I accordingly conclude that the sum of $250,000 represented by the note in question was not a claim against the decedent's estate or deductible as such.

The accrued interest on that note, however, is not in the same position. It is clear that the testator imposed upon the decedent as a condition of receiving the advance of $250,000, the obligation to pay interest thereon. At the time of his death the accrued and unpaid interest amounted to $2,000. This was unquestionably a claim against his estate and deductible as such.

■ What I have already said leads inevitably to the conclusion that the $250,000 which was advanced to the decedent by the trustees of his father's estate under the provisions of the latter's will was a bequest within the meaning of section 303(a). This, however, is not enough to make it deductible under the act unless it further appears that the property which was the subject of the advance was subjected to an estate tax as a part of the father's estate and could be identified in the possession of the decedent at the time of his death. The property involved consisted of an interest of $250,000 in the partnership of George H. McFadden & Brother, of which both the decedent and his father were members. There is no dispute as to the fact that the father's interest in the partnership was included in his estate and subjected to estate tax. $250,000 of the interest was transferred by his trustees to the decedent, increasing the latter's interest in the firm to $4,324,694.12. From the day of the transfer to the day of his death the value of decedent's total interest in the partnership was never less than this sum and when he died it had increased to $4,538,520.63. Under these circumstances it is evident that decedent's interest in the firm at his death included the whole of the $250,000 interest which he received as an advance from the trustees of his father's estate. This I think is a sufficient identification of specific property received by the decedent within five years from a prior decedent's estate. I, therefore, conclude that the sum of $250,000 is deductible as such in determining decedent's net estate.

■ It is quite evident from an examination of the statute that the intention of Congress was to prevent the imposition of the federal estate tax upon the same property more than once within a period of five years. Parrott v. United States (D.C.) 42 F.(2d) 522. The conclusion to which I have come is in accord with this intent.

634

Furthermore, I cannot escape the impression that the item under discussion is either a claim or a bequest and, therefore, deductible under the one head or the other.. As I have indicated, I am convinced that it is a bequest, but to hold it to be neither one nor the other would to my mind be to deprive this estate of a deduction to which in equity and good conscience it is entitled and which the statute intended it should have. In my view the case is one to which the rule that taxing statutes are to be construed strictly in favor of the taxpayer is peculiarly applicable.

## Conclusions of Law.

The Commissioner of Internal Revenue erroneously included in the decedent's gross estate the corpus of the trust transferred under the deed executed by the decedent to Girard Trust Company as trustee, dated February 9, 1928.

The Commissioner of Internal Revenue erroneously refused to allow the deduction from the decedent's gross estate as a claim against his estate of interest from November 18, 1930, to the date of his death, amounting to $2,000 on his note given to the trustees under the will of George H. McFadden, deceased, for $250,000.

The Commissioner of Internal Revenue erroneously refused to allow the sum of $250,000, representing the amount advanced to decedent by the trustees under the will of George H. McFadden, deceased, as a deduction from decedent's gross estate, representing property received by decedent by bequest from a prior decedent pursuant to the provisions of section 303(a) (2) of the Revenue Act of 1926 (44 Stat. 72).

Estate tax and interest thereon amounting to $35,017.71 paid on August 22, 1934, and estate tax amounting to $589.36 paid on June 22, 1932, were illegally collected from petitioners, and they are entitled to recover said sums with interest from the dates of payment in the suit in No. 18624.

Under the stipulation of the parties plaintiffs are not entitled to recover in the suit in No. 19830.

I accordingly find in favor of the petitioners and against the respondent in No. 18624 in the sum of $35,607.07, with interest on $35,017.71 from August 22, 1934, and on $589.36 from June 22, 1932.

In No. 19830, I find in favor of the respondent and against the petitioners.