## ASKANIA WERKE, A. G., v. HELVERING, Commissioner of Internal Revenue.

### No. 6939.

United States Court of Appeals for the District of Columbia.

Argued Jan. 13, 14, 1938.

Decided April 4, 1938.

Louis A. Spiess, of Washington, D. C., for petitioner.

James W. Morris, Asst. Atty. Gen., and Morrison Shafroth, Ralph E. Smith, Sewall Key, and Warren F. Wattles, all of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

GRONER, C. J.

Petitioner is a German corporation with offices in Berlin, Germany, and is engaged in manufacturing and selling scientific instruments and apparatus. In 1926 it opened an office in Houston, Tex., and appointed one G. Stubbe as its agent to negotiate sales of its products. The sales were made large-

---

[5] See note 1, supra.

ly to operating oil companies. Stubbe had no assistants and did all the work himself. Whenever he had a prospective purchaser he would submit by cable to the company in Germany the name of the purchaser, the merchandise desired, and an inquiry as to whether and when it could be furnished. The company would reply by cable, and if the purchaser was satisfied his order was sent in and it was confirmed by the German company in writing. This confirmation was transmitted to Stubbe and by him to the purchaser. Ordinarily, he attached to the confirmation a printed statement termed "Conditions of Sale," which, among other things, stated that the goods would be shipped f. o. b. Hamburg, and insurance from that port to destination should be covered by the purchaser. It also stated that the property passed to the purchaser as soon as the goods left the factory, and that the contract should be construed and treated as a German contract in conformity with German law. Sometimes copies of the statements were not transmitted to purchasers until receipt and transmission of the invoices. At the beginning the invoices disclosed the itemized charges for duty, freight, insurance, and other expense items incident to the transportation of the merchandise from Germany. Later, the invoices would show a single amount as the price of the goods and a statement in these words: "This price is quoted f. o. b. Houston, Texas." Upon receipt of the invoice in German Stubbe would rewrite it in English. No other change would be made, and the invoice so copied would be transmitted to the purchaser. Stubbe would pay the duty on the merchandise and all other costs incident to transportation. He would collect the invoice price and thereafter transmit it to the home office in Germany, retaining only a commission on the sales price in Germany. Stubbe kept no books of account, except a cash book showing receipts and disbursements and the amounts transmitted by him to the company in Germany.

Petitioner made no income tax returns for the years 1926 and 1927,[1] but Stubbe without authority did make a return in 1928 and subsequently, at the suggestion of a revenue agent, filed returns for the years 1926 and 1927. The Commissioner assessed deficiencies for the three years in the amount of $5,953.21 and penalties for the years 1926 and 1927 totaling $832.64. In determining deficiencies the Commissioner, in the absence of books and records showing the profits on the sales, computed net income on the basis of gross sales, treating 10 per cent. thereof as net income—the 10 per cent. rate being the average of like or similar domestic corporations doing business in the United States. The opinion of the Board turned upon the question whether under the terms of the contracts title to the merchandise passed and the sale took place at the point of shipment when the seller had loaded the goods on the carrier, secured the insurance, and forwarded to the purchaser the proper shipping documents. If the sales were consummated in Germany, the Board conceded there should be no tax liability. East Coast Oil Company, S. A., v. Com'r, 31 B.T.A. 558, affirmed Com'r v. East Coast Oil Co., 5 Cir., 85 F.2d 322. The Board, however, held that the facts shown by the record failed to measure up to the requirements of the rule announced in the East Coast Oil Case. On this subject the Board said: "In support of his contention that we have such sales in this case, the petitioner points to the terms previously recited from the conditions of sale. Attention is also called to the fact that the price quoted to the purchaser in the invoice is in the same amount as the total of the retail price in Germany, transportation costs, insurance, and import duty. It is also insisted that the billing and shipping of the goods in the name of the purchaser are significant."

But the Board continued: "While it does appear that the conditions of sale were transmitted to the purchaser, we have no information whatever as to the importance of these conditions as reflected by the letters of confirmation or the written contracts, if any were executed, and we do know that in numerous cases a statement of conditions was not sent with the letter of confirmation but with the invoice. The invoices on their face negatived any idea that the sales were made under c. i. f. contracts. They specifically stated that the price quoted was f. o. b. Houston, Texas. Furthermore, the invoices did not indicate in any manner whatever that insurance, freight, or import duties were computed separately in making up

---

[1] Petitioner claims that it submitted the question of its liability for income taxes to the American Legation in Germany and was advised that it was not liable, and claims also that Stubbe was unauthorized to make any returns on its behalf.

the f. o. b. prices shown on the invoices. It is also noticeable that there is nothing to indicate that the usual bill of lading or the essential and necessary policy of insurance accompanied the invoice. The nature of the sale is determined by what was finally done and not by conditions which may have appeared in preliminary writings but not adhered to. United States v. Andrews & Co., 207 U.S. 229, 28 S.Ct. 100, 52 L.Ed. 185. It is our opinion, on the facts as they appear in the record, that delivery of the goods and transfer of title occurred in Houston, Texas."

We have reached the conclusion, after a careful examination of the entire record, that the case should be remanded to the Board for reconsideration.

■ First. The case was originally heard before Member Lansdon. The only witness was Stubbe. He related how sales were effected, telling about the cables, the statements of the conditions of sale, the invoices, etc. In his cross-examination he said: "Documents of the nature, and identical with petitioner's Exhibit 2, entitled 'Conditions of Sale' were delivered to the purchaser either with the confirmation order, or with the invoice. The confirmation contained details as to the price and delivery and terms. I do not seem to have an official confirmation here. I do not know whether such an official confirmation is in the record up to the present time."

At this point counsel for the Commissioner moved to strike out the witness' testimony referring to confirmations on the ground that the confirmations were in writing and were themselves the best evidence of what they contained. The Board member denied the motion. Previously, and as the result of a similar objection, the Board member had ruled that the Commissioner's objection went to the weight and not to the materiality of the evidence, and he allowed Stubbe to testify that three invoices which he introduced in evidence and which he obtained from the Commissioner's files (they having been theretofore surrendered to the Commissioner) were typical examples of invoices made by the German factory to purchasers in the United States. These invoices showed that the duty, insurance, and freight, while separately calculated, were included in the sales price. Subsequently, the term of Member Lansdon expired, and the record in the case apparently was turned over to Member Turner to make and prepare the decision for the Division before

which the case was pending, and this he did without having seen the witness or heard oral argument. It may very well be that a situation like this is unavoidable; but it is nevertheless unfortunate. In such circumstances it is easy to understand that the member called on to prepare the decision might obtain an imperfect picture of the case. Preliminary and off-the-record colloquies would not appear, and rulings which the member made but which do not comport with his successor's view of orderly procedure would naturally not make a favorable impression. Thus a taxpayer who proved all that the examining member thought essential, or who proved it in a manner that member deemed proper, might subsequently find when his case was transferred to another member that the latter entertained contrary views of the essentials and form of proof. In the present case the petitioner moved for a review of his case by the Board, but this was denied without opinion or comment. In the present case, as we have briefly pointed out, the member hearing the evidence ruled that in the absence of written confirmations covering each sale petitioner's witness could testify to the facts from his own recollection. Commissioner offered no evidence to the contrary, and so ordinarily the question would turn upon Stubbe's credibility. But when Member Turner came to prepare the decision he said: "The petitioner failed to produce copies of any of the sales contracts. Neither did it offer any copies of the so-called letters of confirmation. Under the circumstances, we must determine the nature of the sales contracts on the basis of such facts as we have. If it had been shown that the conditions of sale were made a part of each contract and the things done were in harmony with the conditions stated therein, we would readily conclude that the contracts were of the nature contended for by the petitioner."

This statement very clearly shows that, while the original member regarded the oral testimony of the manner of the conduct of the business as admissible evidence, the member writing the decision ignored it and placed the decision to a considerable extent on the failure to supply the written documents. It may very well be that the documentary evidence should have been introduced or the failure to introduce it properly explained; and a holding that such proof was an essential part of petitioner's case might have been in all respects proper. But that is not the situation here, for we think

it clear from a reading of the whole decision that controlling emphasis was placed not so much on the inadequacy of such proof as was made but more particularly on the failure of petitioner to produce evidence which petitioner might well have believed it had been excused from producing. And we might remark in passing that the reference in the decision to petitioner's failure to produce copies of the "sales contracts" is not justifiable in view of the fact that so far as appears there was no single written instrument which might be called a sales contract.

**Second.** Commissioner in determining the deficiencies apparently had before him all of Stubbe's records but, as we have seen, these were the cash book, showing his collections and disbursements, and some of the orders and telegrams. Considering, therefore, that he had no proper figures on which to compute income, the Commissioner ascertained the amount of net income by applying a rate of 10 per cent. on petitioner's entire gross sales in this country, and in his notice of assessment the Commissioner said: "The rate used is the average for corporations doing business within the United States of like or similar nature and volume to that indicated by the returns filed."

Commissioner's statement that the computation was on the average for corporations doing business within the United States may be construed, perhaps, to mean either domestic corporations or foreign corporations, but we think the Commissioner meant domestic corporations, for on the application for rehearing and in its assignment of errors in this court petitioner called attention to the fact that counsel for the Commissioner admitted in his brief that the Commissioner meant domestic corporations, and that the statement has been nowhere denied or questioned. The Board member who prepared the decision was apparently misled by the ambiguous language in the Commissioner's notice of assessment, for he approved the Commissioner's deficiency on a finding that "the percentage [was] arrived at on the basis of average profits realized by other foreign corporations engaged in like or similar transactions." If that were correct and if the Commissioner had adopted the average of other foreign companies, we should be slow to say that in the circumstances this was not a justifiable method; but what appears is that the Commissioner adopted one method and the

Board approved on its understanding that he had adopted another. The mistake was called to the Board's attention on the motion for rehearing but, as we have said, the motion was denied. As the matter now stands it appears that the Commissioner assessed a 10 per cent. profit on petitioner's gross sales, which included the amount paid by petitioner in duties, insurance, and freight, and the uncontradicted testimony is that these items together averaged approximately 50 per cent. of the total cash petitioner received. Granting that the Commissioner may make an assessment on a comparative basis where the taxpayer either does not or cannot offer adequate proof of true net income, still it would seem to be highly inequitable to confirm a deficiency based upon items of profit which in the very nature of things have no relation to profit, unless it should appear—as it does not—that the comparison is in fact a reasonable one. But the ground on which we think this matter should be reheard is that an obvious mistake appears in the Board's opinion—a mistake which on the face of things must be taken by us to be prejudicial.

If upon a subsequent hearing petitioner's proof is no more definite than in the present record, proof to the effect that similar foreign corporations earn a net income of approximately 10 per cent. of the gross amount received from sales made in this country would doubtless be sufficient. Similarly it would be sufficient if the proof showed that the situation with respect to domestic corporations is comparable to the situation existing here and that domestic corporations have a net income averaging 10 per cent. of gross receipts. In other words, so far as this court is concerned, either basis of comparison is unobjectionable if reasonable. The sanction which the Board gave to the Commissioner's method of assessment, however, did not proceed from an investigation of the situation either as to domestic or as to foreign corporations and certainly did not go to the extent of establishing what was a fair and reasonable comparative basis as to either. Since the Board has affirmed, not on what the Commissioner did, but on what it erroneously thought he had done, we think the case clearly requires re-examination, and in this view we remand to the Board for such further action consistent with the opinion as may be proper.

Reversed and remanded.