**INDUSTRIAL TRUST CO. v. COMMIS-SIONER OF INTERNAL REVENUE.**

No. 4277.

Circuit Court of Appeals, First Circuit.

Dec. 26, 1947.

MAGRUDER, Circuit Judge, dissenting in part.

Richard F. Canning, Ira Lloyd Letts and Andrew P. Quinn, all of Providence, R. I., for petitioner.

Helen Goodner, Sp. Asst. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., Helen R. Carloss, Robert N. Anderson and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for commissioner.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The executor under the will of Milton J. Budlong, who died on July 5, 1941, has brought this petition for review of a decision of the Tax Court[1] insofar as it determined a deficiency in the estate tax due.

On July 1, 1929, the decedent established four trusts, with himself as trustee, for the primary benefit of his three children, a daughter and two sons, and his sister, Mrs. George A. Woolsey, repectively. The issue of his three children were designated as remaindermen of all four trusts. A fifth trust created in the same indenture terminated prior to his decease by reason of the death of the beneficiary.

The indenture provided that the trustee should pay over to the several principal beneficiaries so long as they should respectively live, and, in the case of the decease of any of the principal beneficiaries who were children of the settlor, to their surviving children instead, such part or all of the net income of the trusts for their respective benefits as in each case the trustee in his discretion should from time to time deem advisable. It was provided, however, that with respect to Mrs. Woolsey such payment should aggregate $2500 per annum during her life, with power in the trustee to expend such portions of the principal of her trust as might be necessary in addition to the net income thereof to produce the minimum annual payment. The trustee had discretion to add from time to time any undistributed income of any of the trusts to the principal of its respective trust. After the decedent should cease to act as trustee, the successor trustee was to pay over to Mrs. Woolsey $2,500 per annum from net income and from principal if necessary, accumulating the balance of the net income, if any. He was also to pay over to the settlor's daughter all of the net income of the trust for her benefit, not including, however, sums accumulated from prior years, and to pay over to each of the primary beneficiaries who was a son of the decedent who should have graduated from college, or should have attained the age of twenty-five years, all of the net income of the trust for his benefit, not including, however, income accumulated from prior years. The trust instrument further provided that "said trustee" should have power from time to time in his discretion to expend from the principal of said trusts such amounts as he might deem necessary for the benefit of the respective primary beneficiaries thereof or, in the case of the decease of such of them as were children of the settlor, their respective issue, in case of sickness or other emergency. There was no express reservation of power to alter, amend, revoke or terminate. The trusts were irrevocable and were not made in contemplation of death. Property was transferred to them prior to and subsequent to March 3, 1931.

The decedent on June 16, 1937 created an additional three trusts for the primary benefit of his daughter and two sons, respectively, with remainders to their respective issue. The decedent was trustee of each trust until his death. Each trust instrument provided that the trustee should pay over all the net income to the child named therein, provided that so long as the decedent should remain the sole trustee the trustee should pay over to the named child so much and no more of the net income as the trustee should in his absolute discretion determine, and should add any undistributed income to the capital of the trust estate. These trusts also were irrevocable and there was no express reservation of power to alter, amend, revoke or terminate. They were not made in contemplation of death.

The Commissioner concluded that the corpora of the trusts, except for the value of Mrs. Woolsey's life annuity, were includible

[1] 1946, 7 T.C. 756; see also supplemental opinion on recomputation of the deficiency, 1947, 8 T.C. 284.

in decedent's gross estate under § 811(c) and (d)[2] of the Internal Revenue Code and determined a deficiency accordingly.

The Tax Court decided that as to the 1929 trusts the right to invade the corpus in case of sickness or other emergency, even if retained by the decedent, was not a power to "alter, amend, or revoke" within § 811(d) and, therefore, no part of the property transferred to the trusts before March 3, 1931 was includible in the gross estate. But the Tax Court held that the power reserved by the decedent, even though as trustee, to distribute the income or accumulate it in his discretion, amounted to a power to designate the persons who should possess or enjoy income within the meaning of § 811(c), thus making all the property transferred to the 1929 trusts after March 3, 1931 and the entire corpora of the 1937 trusts includible in the gross estate. The property transferred before March 3, 1931 was not included since this portion of § 811(c) added by a joint resolution of that date has only prospective effect. Hassett v. Welch, 1938, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858. The present value of Mrs. Woolsey's life annuity of $2,500, insofar as it related to property transferred after March 3, 1931, was deducted, however, on the theory that as to this the decedent had no power to control.

The executor has petitioned for review on the ground that § 811(c) does not apply to any of the trusts, and that even if it is applicable to the childern's trusts it is not in the case of Mrs. Woolsey's trust. The Commissioner has not petitioned for review.

The two questions thus presented are (1) whether the corpora of trusts, the income of which could be paid to primary beneficiaries or withheld by the decedent-grantor and added to the corpus, eventually to go to the remaindermen, are includible in the decedent's gross estate under § 811(c) on the ground that he possessed a right to designate the persons who should possess or enjoy the income, and (2) if so whether in the case of a trust with a primary beneficiary entitled to a minimum sum certain before the decedent could accumulate the income, the entire corpus of the trust, less the present value of the life annuity, is properly includible in the gross estate.

The taxpayer admits that the decedent had a power to determine who should receive the income as between the life tenants and the remaindermen. Nor does it contest the holding of the Tax Court that

---

2 Internal Revenue Code, § 811, 26 U. S.C.A. Int.Rev.Code, § 811.

"(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

"(d) Revocable transfers

"(1) Transfers after June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;

"(2) Transfers on or prior to June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * * "

it is immaterial that the right to designate was exercisable by the decedent as "trustee". We think this clearly right in view of the reasoning of Welch v. Terhune, 1 Cir., 1942, 126 F.2d 695, certiorari denied, 1942, 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519, and similar cases, which although directly concerned with what is now § 811(d)(2) applies equally to § 811(c).

The taxpayer contends, however, that a power to designate under § 811(c) does not include a power limited only to choosing between two persons already named. An examination of the history of this phrase lends some credence to the contention. Under § 811(d) the fact that the decedent can only choose among a limited class is immaterial. Commissioner v. Estate of Holmes, 1946, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228; Chickering v. Commissioner, 1 Cir., 1941, 118 F.2d 254, 139 A.L.R. 508 certiorari denied, 1941, 314 U.S. 636, 62 S.Ct. 70, 86 L.Ed. 511. But under § 811(d) only the interest that may be shifted is included in the gross estate. Commissioner v. Bridgeport City Trust Co., 2 Cir., 1941, 124 F.2d 48, certiorari denied, 1942, 316 U.S. 672, 62 S.Ct. 1042, 86 L.Ed. 1747. Thus it is clear that a pre-1931 reserved power to designate who should enjoy the income was not sufficient to throw the entire corpus into the gross estate. Estate of Edward E. Bradley, 1943, 1 T.C. 518, affirmed sub nom. Helvering v. Washington Trust Co., 2 Cir., 1944, 140 F.2d 87, 155 A.L.R. 845; McFadden v. United States, D.C.E.D.Pa.1937, 20 F.Supp. 625. Contra: Hoblitzelle v. United States, 1933, 77 Ct.Cl. 639, 3 F.Supp. 331. Since even an unlimited power to designate who should enjoy the income during the life of the decedent did not require the value of the corpus to be included in the gross estate under § 811(d), nor under § 811(c) prior to its amendment in 1931, the plaintiff urges that this was the power at which the legislation was aimed. The argument is bolstered by the fact that the Joint Resolution of March 3, 1931 was enacted to close the gap left by the decision in May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, and the three subsequent cases, Burnet v. Northern Trust Co., 1931, 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 1931, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; McCormick v. Burnet, 1931, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413. The taxpayer urges that the Resolution should be interpreted in the light of that background, and that only a broad reserved power tantamount to a reserved life estate was intended to be included.[3]

Although this argument is persuasive, we find no warrant in the plain words of the statute for making a distinction between narrow and broad powers. The decedent literally had a power to designate who should enjoy the income. A distinction such as suggested would introduce numerous complexities into the administration and interpretation of this section. The taxpayer would have us draw a line between a power to select among people named in the instrument and a power to select among people at large. But this would allow easy avoidance of the tax by careful draftsmanship without any change in substance. It would be a relatively simple matter to put in the instrument a list of persons which would cover practically anyone that the decedent might ever wish to designate. In interpreting an unambiguous statute we should not assume that Congress has acted so as to allow such easy avoidance of tax. Nor would any distinction based on the number of persons among whom the decedent might chose be sound as a matter of judicial interpretation. Thus, all the property transferred to the trust for the children after March 3, 1931, and the corpora of the 1937 trusts were rightly included in the gross estate.

---

3 Cf. Eisenstein, Powers of Appointment and Estate Taxes: II, 52 Yale L. J. 484, 540 n. 215 (1943): "The Resolution's reference to the decedent's reservation of a right to designate who shall possess or enjoy the property or its income was apparently intended to embrace a reservation analogous to a life estate, i.e., the right to designate the person who would enjoy or possess the property for the duration of the decedent's life. A reserved power to determine the eventual takers of property after death was already taxable under subsections (c) and (d) of the prior versions of section 811 of the Code."

To the extent to which the decedent retained a power to accumulate income in the trust for Mrs. Woolsey, his sister, it is the same as the other trusts. But it differs from the others, however, in that she was always to receive $2500 per year out of income and principal, if necessary. The decedent could accumulate income only in excess of that amount. The Tax Court made what it considered the proper adjustment by discounting the value of the corpus of that trust by the value of the life annuity of Mrs. Woolsey. It was no doubt misled by the fact that the Commissioner, who had contended that all of the corpus of the trust for Mrs. Woolsey (including that part transferred before March 3, 1931, as well as after) should be included in the decedent's gross estate under § 811(d), had excluded the value of the annuity. This may have been correct on the theory he was then pursuing that by the reservation of the power to invade in case of sickness or other emergency, the decedent had kept a string on the corpus in that he could give the corpus to her. But since she was entitled to a minimum of $2500 per year which could come out of the corpus if necessary, this string was only over the difference between the entire corpus which he might conceivably *give her and the annuity she was to receive in any event.

The Tax Court, however, held that § 811(d) was not applicable but it nevertheless deducted the value of the annuity in applying § 811(c). We think the Tax Court erred by using an incorrect method of computing what proportion of the corpus should be included. The regulations provide that if the reservation of the right to designate pertains to a part only of the transferred property, or to a part only of the income therefrom, only a corresponding proportion of the value of the transferred property is includible in the gross estate, U.S.Treas.Reg. 105, § 81.19 (1942). Both parties are essentially in agreement that the Tax Court's method was wrong, but there is however a dispute as to what is the proportion that should be included.

 The taxpayer argues that a four percent rate should be postulated and, since the corpus ($34,668.40) at four percent would not yield $2,500, it maintains that no part of Mrs. Woolsey's trust should be included. We cannot agree that a four percent rate should always be assumed. The taxpayer relies on the regulations providing that in valuation of annuities, life estates, and remainders, a four percent rate is proper. But it appears to us that the taxpayer has confused two different matters. Valuation of future interests is always a guess, though it should be an informed guess. Some rate must be assumed and the regulations generally postulate the four percent rate. But even in cases of valuation there are exceptions; and other rates will be used if some valid reason is shown for so doing, e.g., Hanley v. United States, 1945, 105 Ct.Cl. 638, 63 F.Supp. 73; Security-First National Bank v. Commissioner, 1937, 35 B.T.A. 815. Here the question is not one of determining the value of particular property; it is rather one of determining what portion of the property the decedent had in effect not completely relinquished because of his control of the income. There is no necessity for assuming an artificial rate when the actual income for past years can be ascertained. If for some reason the actual income over past years can not be determined, the Tax Court, whose function it is to find the facts, might be justified in assuming an average rate of four percent. But that is not our function as a reviewing court.

 The Commissioner takes the position that the taxpayer has failed to show what part of the property should not be included because of the $2,500 annuity which the decedent could not control. He thus contends that there was a failure of proof and that the Tax Court was in error in failing to include all the property transferred after March 3, 1931, although he has not petitioned for review on this point. The Commissioner would thus have us affirm the decision of the Tax Court. We do not think that such action would be proper or in accord with the power given the circuit courts of appeal to remand for a rehearing if justice requires it. Int.Rev.Code § 1141(c), 26 U.S.C.A. Int.Rev.Code, § 1141 (c). From the instrument, it is clear that the decedent could not control all the income, but only that in excess of $2,500. The part of the corpus transferred after

March 3, 1931 necessary to produce the share of the $2,500 attributable to the post March 3, 1931 transfers should have been excluded. We see little difference between this type of reserved power and a power to designate half the income. There it seems clear that only one-half the corpus would be included. The same principle should have been applied here. We do not agree with the Commissioner's view that because the taxpayer failed to establish facts on which a fair apportionment can be made the Tax Court's determination at the erroneous figure should be sustained and this Court should not remand for further hearing. There is no support for the idea that the Commissioner's determination, which is clearly without rational foundation when applied where this portion of § 811 (c) is involved, should be enforced because the taxpayer has not shown the exact amount. Cf. Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Forbes v. Hassett, 1 Cir., 1942, 124 F.2d 925, 928, and cases cited.

The case is remanded to the Tax Court on this point for further proceedings. That body may make findings as to whether the income realized ever exceeded $2,500 and thus determine whether in actuality the decedent retained any power. Even if the income did exceed $2,500 there should be excluded a proportionate part of the corpus necessary to produce an income of $2,500. We have previously remanded cases for determination of all the relevant facts in analogous situations. Saltonstall v. Commissioner, 1 Cir., 1945, 148 F.2d 396. The power to remand should be liberally exercised when the burden of proof device would otherwise work an injustice. Cf. Underwood v. Commissioner, 4 Cir., 1932, 56 F.2d 67. We think such a procedure is especially called for when the Tax Court has not proceeded on the grounds of failure of proof, but instead has acted upon a mistaken interpretation of what the Commissioner had done. Cf. Askania Werke, A.G. v. Helvering, 1938, 68 App.D.C. 315, 96 F.2d 717.

The decision of the Tax Court is affirmed in part, and reversed in part and remanded to that Court for further proceedings not inconsistent with this opinion.

MAGRUDER, Circuit Judge (dissenting in part).

While the provisions of § 811(c) and 811(d) overlap to some extent, it is important to stress that whenever § 811(c) is applicable, the value of the corpus is included in the decedent's gross estate, whereas in the case of transfers falling within § 811(d) there must be included only the value of the particular interests the enjoyment of which had been subject to a change through the exercise of a power in the decedent to alter, etc. Where the enjoyment of the primary life estate is subject to a power in the decedent to withhold the income and add it to principal, such power falls within the description of § 811(d), and the value of the life estate must be included in decedent's gross estate. In the present case that would be true, it seems to me, as to all the transfers in trust, whether made before or after March 3, 1931.

But though the control which decedent had over the enjoyment of the life estates requires the value of those interests to be included in the gross estate, under § 811(d), it does not follow that the same control requires the corpora of the trusts to be swept into the gross estate under § 811(c). The statutory language in § 811(c), describing the power over income which has the tax consequence of requiring the corpus of the trust to be included as part of the decedent's gross estate, is markedly different from the language of § 811(d).

As the opinion of the court points out, the amendment to § 811(c) which Congress rushed through on March 3, 1931, was prompted by three decisions of the Supreme Court handed down March 2, 1931. Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413. In the first two of these cases the grantor reserved to himself a life interest in the income (See Commissioner v. Northern Trust Co., 7 Cir., 41 F.2d 732 and Commissioner v. Morsman, 8 Cir., 44 F.2d 902); and the 1931 amendment to § 811(c) covered these cases by providing that the value of the corpus should be included in the gross estate where the grantor had reserved to him-

self the possession or enjoyment of or the right to the income from the property transferred. In the McCormick case, supra, the trustees had been directed to accumulate the net income and add the same to the principal, subject, however, to the following provision: "Said Trustee shall from time to time in each year pay out of said net income for charitable uses and purposes such sums and amount of money as said first party [the grantor] shall designate and request in writing, specifying to whom the same is to be paid and the particular charitable uses and purposes to which the same is to be applied". The McCormick case obviously inspired the other phrase inserted by Congress in the 1931 amendment, "the right * * * to designate the persons who shall possess or enjoy * * * the income * * *."

I agree with the court that the foregoing phrase cannot be limited to cases where the power to designate the persons who shall enjoy the income is unrestricted. Indeed, in the McCormick case, the power was not unrestricted, for there the income was to be accumulated by the trustees, subject only to a power in the decedent to direct that income be paid to charities. The possible recipients of his bounty were thus limited to a class described in the trust instrument.

But it does not seem to me that a mere power to accumulate income aptly falls within the phrase "the right * * * to designate the persons who shall possess or enjoy * * * the income * * *." I think it more likely that if Congress had intended that the reservation of this very familiar power should have the drastic consequence of requiring the inclusion in decedent's gross estate of the whole value of the corpus, it would have explicitly so provided. A power to withhold the income from the life tenant is not a power to designate who shall enjoy the income. If the income is withheld from the life tenant and added to principal, no one will enjoy it as income. Nor does the power to accumulate income enable the holder of the power to designate who shall ultimately receive the same as augmented corpus. That is rigidly determined by the provisions of the trust instrument and is subject to

contingencies which were beyond the control of the decedent. At any particular time when a decision is made not to pay income to the life tenant but to accumulate it, it could not be known who would ultimately benefit by such accumulation.

I therefore think that § 811(d) applies here rather than 811(c).