PURA BLANCO WIDOW OF SERRA ET AL., Petitioners, *v.* TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

No. 255. Argued June 1, 1951.—Decided November 29, 1951.

*Córdova & González* and *Hernán R. Franco* for petitioners. *Víctor Gutiérrez Franqui, Attorney General, (Federico Tilén, Acting Attorney General,* on the brief), and *Arnaldo P. Cabrera, Assistant Attorney General,* for intervener, respondent in the main action.

MR. CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

The Tax Court of Puerto Rico dismissed the complaint filed by Pura Blanco Widow of Serra against the decision of the Treasurer of Puerto Rico denying her petition for refund of part of the income tax paid by the petitioner corresponding to the year 1946. To review said decision we issued the writ of certiorari in the present case.

There is no controversy as to the facts, which were stipulated by the parties in the lower court as follows:

"1. Juan P. Serra was petitioner's husband and father of Ana Cecilia and María Cecilia Serra Blanco, who were born on October 11, 1926 and June 20, 1928 respectively.

"2. Juan P. Serra died in San Juan, Puerto Rico on May 6, 1945.

"3. By an order entered on June 22, 1945 by the Hon. Judge Ricardo La Costa, Jr., District Judge of the Judicial District of San Juan, Puerto Rico, Civil Case No. R–5654, the said Court designated and declared sole and universal heirs of said Juan P. Serra his minor children, Ana Cecilia and María Cecilia Serra Blanco, and his widow Mrs. Pura Blanco, in the usufructuary quota established by law.

"4. After the corresponding notice of death was filed, the respondent, the Treasurer of Puerto Rico, on January 23, 1946 liquidated the inheritance tax to be paid by the heirs of Juan P. Serra, imposing an inheritance tax of $12,022.54, to each of the two minor daughters that is, the inheritance tax of both children amounted to $24,045.08, the whole property of the decedent and his wife being appraised at $412,729.55.

"5. The Exhibits A–G are an inventory of the property appraised at their assessment value for the purpose of the inheritance tax.

"6. The total inheritance tax amounted to $24,045.08, and the payment of said taxes was made on February 6, 1946.

"7. Within the term fixed by law, the petitioner filed an income tax return for 1946, enumerating all the income which she alleges having received during the said year from all the property which belonged to her and her deceased husband in the following manner:

| | |
|---|---|
| "Interest on mortgages, bonds, bank deposits and debt claims | $6, 078. 05 |
| "Income derived from rents (of real property) | 17, 528. 50 |
| "Dividends and Profits | 21, 258. 20 |
| "Agriculture | 66. 88 |
| "Gross Income | $44, 931. 63 |

"The petitioner claimed the following deductions:

| | |
|---|---|
| "Property taxes | $3, 512. 53 |
| "Depreciation | 1, 692. 30 |
| "Repairs | 2, 755. 91 |
| "Donations | 311. 00 |
| "Half of medical services, etc. | 455. 00 |
| "Other expenses | 1, 907. 88 |
| "Total Deductions | $10, 634. 62 |

"8. The incomes reported represent the income derived from the property belonging to the petitioner and her daughters and the deductions claimed represent all the expenses and payments which the petitioner and her daughters claim as deductible, with respect to the property belonging to them.

"Nothing stipulated in this paragraph shall be understood in the sense that the Treasurer of Puerto Rico accepts the correction of the items listed as income or deductions nor shall it affect the right of the Treasurer of Puerto Rico to notify or assess deficiencies in connection with the year in question if he should determine that such deficiencies are proper.

"9. The petitioner claimed credits and personal exemption in the sum of $2,800; she reported a taxable income of $31,497.01, and an income tax amounting to $11,023.47, which was paid in two equal instalments in 1947.

"10. The petitioner did not claim as deduction the inheritance tax paid on the estate inherited by her daughters on February 6, 1946 amounting to $24,045.08.

"11. Within the term fixed by law the petitioner requested the refund of $9,784.04 paid by her as income tax for 1946, for the items listed, alleging that in the return filed she had not included, among the deductions claimed, the inheritance tax amounting to $24,045.08 and paid February 6, 1946, and that said tax was deductible under § 16 of the applicable law, and that the said petition was dismissed by the respondent on November 14, 1947 by an administrative decision which reads thus:

" 'You are hereby notified that this Department has decided to deny your petition for refund of income tax for 1946, since the inheritance tax paid by your daughters Ana María (*sic*) and María Cecilia Serra, case No. 2324–A, is not deductible in the tax return filed by you on the said tax year.'

"That the liquidation of the conjugal partnership existing between the petitioner and her deceased husband, Juan P. Serra and the partition of the property of said decedent, was made by virtue of deed number five, executed in San Juan, Puerto Rico, on February 26, 1946 before Notary G. E. González."

Petitioner also offered documentary evidence which was admitted without objection and in regard to the payment of the inheritance tax the lower court stated in its opinion the following:

"On February 4, 1946 the District Court issued an Order authorizing the guardian *ad litem,* Heliodoro Blanco, to draw funds from the National City Bank—San Juan and Bayamón branches—in order to pay the inheritance tax. It is stated in this Order that on January 30, 1946 the guardian *ad litem* had filed in Court a motion applying for the approval of the partition and distribution of the estate, to which an inventory was attached, and which motion was argued in open Court, the district attorney intervening on February 4, 1946. The guardian *ad litem* moved for the withdrawal of funds to pay the inheritance tax *to be charged to the hereditary estate* of the minors to which the District Attorney and the mother of the children consented. When the said withdrawal of funds was authorized the Court stated the following: 'that the said amount or sum will be deducted from the hereditary estate of the said minors upon executing the final partition and distribution of the estate

of the late Juan Primitivo Serra in the proportion of $12,022.54 to each one.'

"On February 7, 1946 the inheritance tax was paid to the Treasurer."

Even though the petitioner assigns six errors, her contention, in the Tax Court as well as in this Court, may be summed up as follows: (1) that the income tax return filed by the petitioner for the year 1946 is equivalent to and should be considered as the tax return of the heirs of Juan P. Serra, as provided by § 20 of the Income Tax Act, and the inheritance tax paid with funds of the hereditary estate of her children is a lawful deduction from the incomes reported by the petitioner in her income tax return, under the provisions of § 16 (a) (3) of said Act; (2) in the alternative, petitioner claims that in 1946 she was the administratrix of the estate of her daughters, who are minors, and as such was responsible for the payment of the inheritance tax, and (3) that even as usufructuary of the estate of her daughters, she could deduct the inheritance tax.

I

The petitioner claims that the income tax return filed by her individually for the year 1946 is equivalent to and must be considered as the income tax return of the heirs of Juan P. Serra pursuant to § 20 (a) (3) of the Income Tax Act, which provides:

"Section 20.— (a) The tax imposed by Parts I and II of this title shall apply to the income of estates or of any kind of property held in trust, including—

". . . . . . . .

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate."

She further alleges that the inheritance tax paid on February 7, 1946 constitutes a lawful deduction from the income that she reported, according to § 16 (a) (3) of said Act, which provides that "In computing net income there shall be

allowed as deductions: . . . Taxes paid or accrued within the taxable year . . ."

We do not find it necessary to consider and determine whether the heirs as such, have the right to deduct from the income received "during the period of administration or settlement" of the estate what was paid as inheritance tax, since for present purposes we have reached the conclusion that the tax return filed by the petitioner can not be considered as the tax return of the heirs of Juan P. Serra.

The stipulation of the parties as well as the evidence shows that the partition of the estate of Juan P. Serra was executed by a public deed on February 26, 1946, thereby liquidating the conjugal partnership existing between the petitioner and her husband. Section 20 (a) (3), *supra*, in referring to the estates (*sucesiones*) as taxpayers and to the income received during the period of administration or settlement of the estate, means the income received prior to the partition, since said partition had the effect of terminating the administration and settlement of the estate and conferred to the heirs the exclusive ownership of the property which may have been allotted to them. Section 1021 of the Civil Code, 1930 ed. See 7 Manresa, *Comentarios al Código Civil Español*, 6th ed., 1943, p. 726 *et seq*. The petitioner argues that the estate (*sucesión*) to which § 20 refers is one which may continue even after partition, and she cites *Buscaglia, Treas.*, v. *Tax Court*, 67 P.R.R. 405. Said case did not involve that question and we do not see it has any bearing on this case.

The petitioner further urges that all the rents yielded by the estate of Juan P. Serra accrued to her and that in her return for 1946 she deducted certain expense items related to the property inherited by her minor daughters such as property taxes, repairs, depreciations, etc. However, we are not concerned here with the propriety of those deductions. On the contrary, in the stipulation of facts presented by the parties it was stated that the Treasurer did not accept

"the correction of the items listed as income or deductions nor shall it affect the right of the Treasurer of Puerto Rico to notify or assess deficiencies in connection with the year in question if he should determine that such deficiencies are proper."

## II

 In the alternative, the petitioner maintains that in 1946 she was the administratrix of the property of her minor daughters, and as such she was responsible for the payment of the inheritance tax, and therefore, she had the right to deduct it from her return, and that, in any case, as usufructuary of said property she also had the same right.

As a matter of fact she was not the one who paid the tax; it was the guardian *ad litem* authorized by the court, with money from the hereditary estate of the two minors in the proportion of $12,022.54 each. And as a matter of law, according to Act No. 99 of August 29, 1925, To Modify and Extend the Inheritance Tax, etc., in force at the time of the death of Juan P. Serra, the inheritance tax was imposed on the heirs for the privilege of receiving the property.[1] That is, this tax is what is known in the federal jurisdiction as a "succession or inheritance tax" which differs from the "estate tax" in which the tax is levied on the privilege of transferring the property. See Inter Vivos Transfers and the Federal Estate Tax, 81 U. of Pa. L. Rev. 937; *Keith* v. *Johnson*, 271 U. S. 1, 8; *U. S. Trust Co.* v. *Helvering*, 307 U. S. 57; *Chickering* v. *Commissioner of Internal Revenue*, 118 F. 2d 254.

The fact that § 9 of Act No. 99, *supra*, provides that the tax shall be paid into the Treasury by "the administrators, executors, trustees or other persons administering the estate charged with said taxes" does not mean that said persons, in their capacity as such, should be the ones to suffer the burden

---

[1] The same holds under Act No. 303 of April 12, 1946. See *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 432.

of said payment. We so held in *Kessler* v. *Domenech, Treas.*, 49 P.R.R. 189, 205 stating: "It is true that the act refers to the administrators, executors, trustees, or other persons administering upon the estate charged with said taxes, *as usually their function is to liquidate the estate* and turn the proceeds thereof over to the heirs free from liens or encumbrances; *but the payment of the taxes always falls upon the heirs, whether such payment is made by the administrators or directly by the heirs.*" (Italics ours.) In other words, § 9 merely prescribes who shall pay the inheritance tax without imposing on him the payment of said tax.

On the other hand, it is true that the Civil Code, notwithstanding the provisions of §§ 432 and 433 [2] does not provide who shall pay the inheritance tax where a usufruct is involved. The taxes referred to in § 432 are territorial—*Buitrago* v. *Gilot*, 27 P.R.R. 327—and inheritance taxes can not be regarded as taxes levied on the capital to which § 433 refers. Since the burden of the inheritance tax falls in this case on the minor daughters, they alone were allowed to deduct it from their income. But then, what scope has the fact that according to § 155 of the Civil Code [3] the petitioner

---

[2] Sections 432 and 433 of the Civil Code, 1930 ed. provide the following:

"Section 432.—Except as provided in the following section, the payment of charges and annual taxes and of those considered as liens on the fruits, shall be at the expense of the usufructuary so long as the usufruct continues."

"Section 433.—Taxes imposed directly upon the capital, during the usufruct, shall be paid by the owner.

"If the latter has paid them, the usufructuary shall pay him proper interest on the sums he may have disbursed by reason thereof and, if the usufructuary advance the amounts of such taxes, he shall receive the amount thereof at the end of the usufruct."

[3] Section 155 of the Civil Code provides:

"Property acquired by an unemancipated child by labor or industry, or for any valuable consideration, belongs to the said child, but the usufruct thereof belongs to the parents having *potestas* over him whilst he lives in their company; but if the child, with the consent of his parents, lives independently, he shall be deemed emancipated for all effects as regards the said property, and he shall be the full owner and have the usufruct and administration thereof."

was the usufructuary of the property of her minor daughters, and according to § 154 [4] she had the administration of said property? The petitioner urges that as administratrix of the property she was the one responsible for the payment of the inheritance tax. We have already stated that payment was made by the guardian *ad litem* with funds that Juan P. Serra had deposited in different banks to be charged to the hereditary estate of his two daughters. It might be said that the administration of the petitioner did not commence until after the partition, but, irrespective of this, we do not agree with petitioner's contention that because the legal usufruct created under § 155 is of a conditional character, since it cannot be alienated, encumbered or waived by the parents because the children have the preferred right of being supported and educated out of the legal usufruct— *Suárez* v. *Registrar*, 35 P.R.R. 466; *Guerra* v. *Ortiz*, 71 P.R.R. 574; 2 Manresa, *Comentarios al Código Civil*, 6th ed., p. 47; 4 Manresa, *op cit.*, 5th ed., p. 328—said legal usufruct is equivalent to a mere administration of the property of her daughters. We find nothing in our Civil Code to the effect that after the usufruct of the petitioner is terminated it is her duty to render account to her daughters as to the fruits that might remain after deducting the corresponding expenses of support, care, and education of her daughters, as she would have to do if she were merely the administratrix of the estate.

██ On the other hand, the Civil Code has clearly enumerated the cases when the administration of the property of the children belongs to the parents or to the children themselves. To this effect § 155 provides that when an unemancipated child, with the consent of his parents, lives independently, he shall be deemed emancipated for all purposes

---

[4] Section 154 provides:

"Section 154.—The administration of the property of children under the *patria potestas* belongs in the first place to the father, and in case of his absence, legal incapacity or death, to the mother."

as regards said property and he shall be the full owner and have the usufruct and administration thereof. Section 157 provides that the property or income donated or left by will for the expenses of education and instruction of a child shall belong to him in property and usufruct; but his father and mother shall have the administration thereof, if in the donation or legacy it be not otherwise provided. Section 158 specifically provides that. "The parents, as regards the property of a child in which they possess the usufruct or administration, have the same obligations as any other usufructuary or administrator, as well as the special obligations on legal mortgage established in the Mortgage Law. An inventory shall be made, with the intervention of the public attorney, of the property of children *of which the parents have only the administration*, and on petition of the said public attorney, the district court may decree that the securities belonging to the child be placed in deposit." (Italics ours.)

There exists, therefore, a marked distinction between a usufructuary and an administrator of the property of an unemancipated child, the obligations, duties, and rights of each one being different.

The judgment will be affirmed.

