

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE  FEB 1 6 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Feb 16, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ESTATE OF BARRY A. ACKERLEY, | ) | No. 92791-0 |
| Appellant, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| WASHINGTON DEPARTMENT OF REVENUE, | ) | |
| Respondent. | ) | Filed  FEB 1 6 2017 |

MADSEN, J.—The Estate and Transfer Tax Act, chapter 83.100 RCW, makes clear that calculating a Washington taxable estate begins with the federal taxable estate and that the Washington definition of "transfer" is the same as the federal definition. Under federal estate tax law, the gift tax paid is included in the taxable estate under the "gross-up rule" and, as such, is transferred upon death as part of the entire estate. Following the legislature's clear mandate, we must also find that the gift tax paid is part of the Washington taxable estate and transferred upon death as part of the entire estate. Thus, the Washington State Department of Revenue (DOR) properly included the gift tax paid in its assessment of Barry Ackerley's estate. We affirm the decision of the Thurston County Superior Court.

Facts

The facts in this case are not in dispute. Ackerley died on March 21, 2011. In 2008 and 2010, Ackerley made substantial gifts of money. On these inter vivos gifts, Ackerley paid the required federal gift taxes, which amounted to over $5.5 million. Upon his death, Ackerley was required under the federal estate tax code to include the value of the gift taxes paid in his federal taxable estate because he died within three years of making the gifts. Ackerley's estate thus included the gift taxes in its federal estate tax return. But when Ackerley's estate filed his Washington estate tax return, it did not include the $5.5 million in federal gift taxes paid as part of the Washington taxable estate. DOR issued a notice of assessment, notifying Ackerley's estate that it owed additional Washington estate taxes on the amount of federal gift taxes paid.

Ackerley's estate petitioned for review under the Washington Administrative Procedure Act (APA) in Thurston County Superior Court. *See* RCW 34.05.514. The superior court held that Ackerley's estate was required to pay Washington estate tax on the federal gift taxes paid because those federal gift taxes paid fall within the definitions of "transfer" and "Washington taxable estate." Ackerley's estate appealed, and the Court of Appeals certified the case to this court for direct review.

Analysis

I. Standard of review

As an appeal of a final agency action, the APA governs review of this case. *See* RCW 34.05.570(4). This court on appeal sits in the same position as the superior court in reviewing the administrative record. *See Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164

Wn.2d 909, 915, 194 P.3d 255 (2008). A reviewing court may grant relief from agency action if such action is "(i) Unconstitutional; (ii) Outside the statutory authority of the agency or the authority conferred by a provision of law; (iii) Arbitrary and capricious; or (iv) Taken by persons who were not properly constituted as agency officials lawfully entitled to take such action." RCW 34.05.570(4)(c). Here, Ackerley's estate argues that DOR acted outside its statutory authority. *See* RCW 34.05.570(4)(c)(ii). Whether an agency has exceeded its statutory authority, as well as the proper interpretation of the underlying statutes, are questions of law that this court reviews de novo. *Chi. Title Ins. Co. v. Office of Ins. Comm'r*, 178 Wn.2d 120, 133, 309 P.3d 372 (2013); *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

When we interpret statutes, our goal is to determine the legislature's intent by giving effect to the plain meaning of the statute, gleaned both from the words of that statute and those in related statutes. *Campbell & Gwinn*, 146 Wn.2d at 10-11. We consider the ordinary meaning of the words, any statutory definitions provided, the context of the statute, related provisions, and the statutory scheme as a whole. *Bank of Am., NA v. Owens*, 173 Wn.2d 40, 53, 266 P.3d 211 (2011) (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

> II. The federal gift tax paid is included in both the "federal taxable estate" and "Washington taxable estate" because the legislature clearly defined the two as the same

This case concerns the intersections between the Washington and federal estate tax systems. Thus, at the outset, it is important to appreciate the close relationship between these two systems. Prior to 2001, Washington did not have an independent estate tax

3

system. Instead, it participated in a federal "pickup" tax system. *In re Estate of Hambleton*, 181 Wn.2d 802, 810, 335 P.3d 398 (2014). But when Congress passed legislation in 2001 to gradually eliminate the pickup tax system, Washington responded by creating its own estate tax. *Id.* This court invalidated the legislature's first attempt at revising the existing statutes, and the legislature enacted a stand-alone estate tax in 2005. *Id.*; *see also Estate of Hemphill v. Dep't of Revenue*, 153 Wn.2d 544, 551, 105 P.3d 391 (2005); LAWS OF 2005, ch. 516 (the Estate and Transfer Tax Act).

While the 2005 act established a stand-alone estate tax, the tax was still tied to a large extent to the federal estate tax code. *See* RCW 83.100.020(7) (defining Washington "gross estate" the same as federal); *In re Estate of Bracken*, 175 Wn.2d 549, 581, 290 P.3d 99 (2012) (Madsen, C.J., concurring/dissenting) (noting that the 2005 act ties state estate taxation to federal law to a large extent). By incorporating the federal definition of "taxable estate," the legislature relied on "the extensive and exhaustive detailed federal statutory scheme that contains the directions for what to include in the gross estate." *Bracken*, 175 Wn.2d at 583 (Madsen, C.J., concurring/dissenting). Because of the legislature's decision to incorporate much of the federal estate tax scheme, the starting point when analyzing an estate tax in Washington is the federal taxable estate.

The relevant question here is thus whether the federal gift tax paid is part of the federal taxable estate and, in turn, part of the Washington taxable estate. The federal government assesses estate taxes on gift taxes paid within three years of death under the gross-up rule. *See* 26 U.S.C. § 2035(b); *Estate of Morgens v. Comm'r*, 678 F.3d 769, 770 (9th Cir. 2012); *Brown v. United States*, 329 F.3d 664, 668 (9th Cir. 2003). Because the

4

federal gift tax paid at issue here was part of the federal taxable estate, and because the legislature clearly incorporated the definition of "federal taxable estate," it follows that the federal gift tax was also part of the Washington taxable estate.

This analysis involves multiple interrelated statutes. RCW 83.100.040(1) outlines the tax rate for the estate tax to be imposed on "every transfer of property located in Washington," along with property outside of Washington at a fractional rate. The "Washington taxable estate" is defined as the federal taxable estate. RCW 83.100.020(15). In turn, "federal taxable estate" is defined as the taxable estate as determined under chapter 11 of the Internal Revenue Code. RCW 83.100.020(6).

Chapter 11 of the Internal Revenue Code contains many provisions relating to what property is in the gross estate, how to value different property, and what adjustments and deductions to make. 26 U.S.C. §§ 2031-2058. Relevant to the present case, the federal gross estate includes the amount of any tax paid on any gift made by the decedent during the three-year period prior to his death. 26 U.S.C. § 2035(b); *see also Estate of Armstrong v. Comm'r*, 119 T.C. 220, 227-28 (2002).

The federal gift tax paid is thus part of the federal taxable estate. And because the two are defined as the same, the gift tax paid is also part of the Washington taxable estate. DOR properly included the federal gift tax paid in the Washington taxable estate.

> III. The federal gift tax paid transferred with the rest of Ackerley's estate because the legislature clearly intended a broad definition of "transfer," consistent with federal law

It is not enough, however, to impose an estate tax for property simply to exist in the taxable estate. Both the federal and Washington estate taxes are excise taxes,

5

imposed on the *transfers* of the taxable estate. *See Hambleton*, 181 Wn.2d at 811;

*Fernandez v. Wiener*, 326 U.S. 340, 352, 66 S. Ct. 178, 90 L. Ed. 116 (1945). The

transfer requirement is important because without it, the tax could not be considered an

"excise" tax and would thus be subject to the constitutional limitations requiring

uniformity on direct taxes. *See Hambleton*, 181 Wn.2d at 811 (citing CONST. art. VII, §

1); *Fernandez*, 326 U.S. at 352, 347 (citing U.S. CONST. art. I, § 8, cl. 1). RCW

83.100.040(1) imposes the state estate tax on "every transfer of property located in

Washington," and 26 U.S.C. § 2001(a) imposes the federal estate tax on "the transfer of

the taxable estate of every decedent who is a citizen or resident of the United States."

As with the taxable estate discussed above, our legislature directly linked the state

definition of "transfer" with the federal definition. *See* RCW 83.100.020(15). The

United States Supreme Court has defined that transfer requirement broadly. "Transfer"

under federal law is not limited to a formal conveyance. The Supreme Court has

described this broad definition of "transfer" as follows:

> [T]he power of Congress to impose death taxes is not limited to the taxation
> of transfers at death. It extends to the creation, exercise, acquisition, or
> relinquishment of any power or legal privilege which is incident to the
> ownership of property, and when any of these is occasioned by death, it
> may as readily be the subject of the federal tax as the transfer of the
> property at death.

*Fernandez*, 326 U.S. at 352.

Ackerley's estate would have us narrow this definition by asserting that the gross-

up rule—which includes the gift taxes paid in the federal taxable estate—is not a tax on a

transfer; rather, it is an incidental tax necessary to achieve estate tax treatment based on

the "incident to" language in *Fernandez*.[1] This not only splinters the broad definition of "transfer" in federal law, it ignores our legislature's clear intent in adopting that broad definition. Our legislature both adopted the broad federal definition and explicitly used the same "incident to" language to describe that breadth that the dissent attempts to distinguish.

Our legislature made clear that it intended "transfer" for purposes of determining the federal taxable estate to be defined the same as for purposes of determining the Washington taxable estate. RCW 83.100.020(15). The legislature quoted the language from *Fernandez*, including the "incident to" language, twice in the 2013 amendments to the Estate and Transfer Tax Act. It first quoted and cited *Fernandez* when expressing its intent. LAWS OF 2013, 2d Spec. Sess., ch. 2, § 1(3) ("The legislature finds that it is well established that the term 'transfer' as used in the federal estate tax code is construed broadly and extends to the 'shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property' that occurs at death. *Fernandez v. Weiner*, 326 U.S. 340, 352 (1945)."); *see also* RCW 83.100.048 ("Findings—Intent . . . 2013 2nd sp.s. c 2"). The legislature then inserted that language directly into the statutory definition of "transfer." RCW 83.100.020(14) ("transfer" defined as it is used in section 2001 of the Internal Revenue Code "and includes any shifting upon death of the economic benefit in property or any power or legal privilege incidental to the

---

[1] Our court applied a narrow definition of "transfer" once before. *See Bracken*, 175 Wn.2d at 574. After *Bracken*, the legislature amended the estate tax statutes in 2013 to make its intent clear: it intended the broad, federal definition of "transfer." *See Hambleton*, 181 Wn.2d at 813; LAWS OF 2013, ch. 2, §§ 1-2.

ownership or enjoyment of property"). The legislature unequivocally mandated that "transfer" be given "its broadest possible meaning consistent with established United States supreme court precedents, subject only to the limits and exceptions expressly provided by the legislature." LAWS OF 2013, 2d Spec. Sess., ch. 2, § 1(5); *see also* RCW 83.100.048 ("Findings—Intent—2013 2nd sp.s. c 2").

Rather than assuming that the Supreme Court in *Fernandez* created a separate incidental tax, we must recognize that it was doing just what Ackerley's estate acknowledges at the outset: recognizing that the federal transfer requirement is broadly defined. We must also acknowledge that in adopting this broad definition, our legislature did not divide it into a tax on a transfer and an incidental tax. It clearly incorporated the definition in full as the definition of "transfer" to be applied in the Washington estate tax system.

After the legislature's 2013 amendments, we too have acknowledged how broadly "transfer" is defined. This court rejected a narrow interpretation of "transfer," stating:

> [T]he estate tax is not "in a strict sense a tax upon a 'transfer' of the property by the death of the decedent. It is an excise tax upon the happening of an event, namely, death, where the death brings about certain described changes in legal relationships affecting property."

*Hambleton*, 181 Wn.2d at 832-33 (quoting *Chickering v. Comm'r*, 118 F.2d 254, 257-58 (1st Cir. 1941)). To put it simply, the transfer requirement is broad. This breadth has been recognized by the Supreme Court, our legislature, and this court.

Ackerley's estate would have us not only narrow the definition of "transfer" by deleting the "incident to" language, but also narrow it by altering to what the transfer

8

requirement is applied. Ackerley's estate reasons that the federal gift tax paid is not included in the Washington estate, in part, because the payment of the federal gift taxes during one's life is not *itself* a taxable transfer upon death. But the relevant inquiry is not whether each constituent element of the taxable estate undergoes a separate, distinct transfer. Rather, the taxable estate, as a whole, must transfer upon death for DOR to assess an estate tax. *See* 26 U.S.C. § 2001(a) (tax is imposed "on the transfer *of the taxable estate*" (emphasis added)).

The United States Tax Court also has rejected this attempt to splinter the taxable estate into separate "transfers." In *Armstrong*, the estate argued that the gross-up rule must describe a "transfer" to be part of the taxable estate. 119 T.C. at 228. The tax court rejected this argument:

> Technically, the [Internal Revenue] Code imposes the estate tax on a single "transfer"—the "transfer of the taxable estate". Sec. 2001(a). . . . This does not mean, however, as the estate implies, that each constituent element of the gross estate, so defined, necessarily constitutes, depends upon, or presupposes a separate and distinct "transfer" of property.

*Id.* at 229. The tax court rejected the estate's technical argument that the gift tax paid had to itself be a "transfer" in order to be included in the federal taxable estate. Rather, the gift tax paid was part of the federal taxable estate under 26 U.S.C. § 2035 and, as an element of the gross estate, it did not itself need to be a separate and distinct "transfer" of property. *Id.*

The relevant "transfer" is not determined by looking at each individual element of the taxable estate. Instead, the relevant transfer is the single transfer that occurs to the

entire taxable estate upon death. As discussed above, the gift tax paid was part of the taxable estate. Therefore, it transferred upon Ackerley's death with the rest of his estate.

## Conclusion

The federal gift tax at issue here falls within the definitions of "Washington taxable estate" and "transfer" as defined by the legislature. Therefore, DOR properly included the gift tax paid in its assessment against Ackerley's estate. This result follows the plain language of the Estate and Transfer Tax Act and the legislature's clear intent. It also avoids the dissent's narrow definition of "transfer" that is unsupported by Supreme Court precedent, our legislature's clear intent, and this court's holding in *Hambleton*.

We affirm the decision of the Thurston County Superior Court.

No. 92791-0

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Stephens, J._

11

No. 92791-0

WIGGINS, J. (dissenting)—A tax paid during life is not a transfer at death. Where no transfer exists, Washington's Constitution prohibits the imposition of an excise tax. In order to satisfy this constitutional dictate, we must do more than ask what the legislature would like "transfer" to mean; the legislature cannot, by its will, transform a nontransfer into a transfer. And we must do more than ask whether particular property is already included in the taxable estate. Rather, we must engage with the substance of the matter and ask whether a transfer occurred.

Here, the federal gift taxes were fully and finally paid during life. Therefore, no transfer of gift taxes occurred at death. I must respectfully dissent.

I.   Washington's Estate Tax Must Involve a Transfer

Washington's Constitution requires uniformity for direct taxation. WASH. CONST. art. VII, § 1; *see also* U.S. CONST. art. I, § 8, cl. 1. A direct tax is imposed on the ownership of property based on the value of the property. *In re Estate of Lloyd*, 53 Wn.2d 196, 199, 332 P.2d 44 (1958). Washington's estate tax cannot be a direct tax because the tax is not imposed at a uniform rate.

Unlike direct taxes, excise taxes are imposed on "'a particular use or enjoyment of property or the shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property.'" *In re Estate of Hambleton*, 181 Wn.2d 802, 811, 335 P.3d 398 (2014) (quoting *Fernandez v. Weiner*, 326 U.S. 340, 352, 66 S. Ct. 178,

90 L. Ed. 116 (1945)). The estate tax "is imposed on every transfer of property located in Washington." RCW 83.100.040(1). Because the estate tax is imposed on a "transfer of property," it is an excise tax, not a direct tax. And because the tax is not a direct tax, it is not subject to the uniformity requirement of the Washington Constitution.

Since the estate tax falls on "every transfer of property," the legislature has defined "transfer": "'Transfer' means 'transfer' as used in section 2001 of the internal revenue code and includes any shifting upon death of the economic benefit in property or any power or legal privilege incidental to the ownership or enjoyment of property." RCW 83.100.020(14). Internal Revenue Code section 2001(a), in turn, sheds very little light on the definition of "transfer," which it defines as follows: "A tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C. § 2001(a).

To recapitulate, both Washington law and federal law describe the estate tax as a tax on transfer of property, specifically as a shifting "upon death" of any economic benefit. *See In re Estate of Bracken*, 175 Wn.2d 549, 563-64, 290 P.3d 99 (2012); *see also Hambleton*, 181 Wn.2d at 832. We have previously held that a testamentary transfer is broadly defined, involving "'an event, namely, death, where the death brings about certain described changes in legal relationships affecting property.'" *Hambleton*, 181 Wn.2d at 832-33 (quoting *Chickering v. Comm'r*, 118 F.2d 254, 258 (1st Cir. 1941)). Here, however, for purposes of the Washington estate tax, Ackerley's death occasioned no change in any legal relationship with respect to the gift taxes Ackerley paid during his lifetime.

2

Since the gift taxes Ackerley paid during his life do not shift any interest in any property at the time of Ackerley's death, there is no transfer of property, and without some transfer or other shifting of property rights upon death, the estate tax does not fall upon the gift taxes paid during Ackerley's life. And without a transfer or shift of ownership of the previously paid gift taxes, there cannot be an excise tax on the previously paid gift taxes. And if a tax on the previously paid gift tax is not an excise tax, it would necessarily be a direct tax on the amount of the gift tax, which would be unconstitutional because it would not be uniform, as required by our Washington Constitution. Thus, the majority's interpretation of the estate tax leads to a nonuniform, unconstitutional tax.

While the majority recites the word "transfer," it discards the word's meaning. The majority defines "transfer" as whatever is "part of the taxable estate." Majority at 10. This is inherently circular. Whether something is permitted to enter the taxable estate depends on the existence of a transfer; whether something is a transfer, therefore, cannot depend on whether it is in the taxable estate.

The majority supports its reading by reference to legislative intent, asserting that the legislature intended to adopt "the broad federal definition" of transfer. *Id.* at 7. Yet the legislature cannot define a constitutional precept out of existence. While a transfer "extends to the creation, exercise, acquisition, or relinquishment of any power or legal privilege . . . occasioned by death," even the broadest definition must not deprive the word of this root meaning. *Fernandez*, 326 U.S. at 352. Something must still change.

In *Chickering*, for example, the mother's death "removed the possibility that the son's interest under the trust deed might be destroyed by an exercise of the reserved

3

power held by his mother." 118 F.2d at 258. This change in legal relationships caused something of value to pass "'from the dead to the living.'" *Id.* (quoting *Porter v. Comm'r*, 288 U.S. 436, 444, 53 S. Ct. 451, 77 L. Ed. 880 (1933)). Something must move; something must change. Death remains the key moment of measurement.

## II. Ackerley's Gift Taxes Paid During Life Are Not Transfers at Death

With respect to the gift taxes Ackerley paid while alive, death prompted no "ripening of property rights," *id.*, no "changes in legal relationships," *id.*, no "shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property," *Fernandez*, 326 U.S. at 352. Nothing changed upon death. The only justification for construing the gift taxes Ackerley paid during life as transfers at death is if the gifts themselves are deemed testamentary transfers. While the federal system adopts such an interpretation, this reasoning rests on federal rules that do not exist and are not applicable in Washington.[1]

---

[1] For efficiency, the federal government has been permitted to construe lifetime transfers made within three years of death as testamentary transfers for estate tax purposes. This pragmatic approach is intended to prevent estate tax avoidance; previously, one could avoid paying estate taxes by gifting away one's entire estate just before death. *United States v. Wells*, 283 U.S. 102, 116-17, 51 S. Ct. 446, 75 L. Ed. 867 (1931). To foreclose this strategy, Congress first enacted a rule establishing lifetime gifts made "in contemplation of death" as part of the testamentary estate. *Id.* at 116. Later, in response to excessive litigation over testamentary motive, Congress created a bright line rule: All gifts made within three years of death are functionally testamentary, regardless of the decedent's subjective motive. *See Estate of Armstrong v. Comm'r*, 119 T.C. 220, 231 (2002) (citing Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1848). As a result, the associated taxes on those gifts have also been construed as transfers at death. *See Estate of Ekins v. Comm'r*, 797 F.2d 481, 485-86 (7th Cir. 1986). However, Washington does not impose a gift tax, nor does it construe gifts made in the three years before death as testamentary transfers. *See* WAC 458-57-105(2)(b); *see also* RCW 83.100.020(7) (defining "gross estate" as the federal gross estate). Because Washington does not treat lifetime gifts as testamentary transfers, it lacks the federal system's predicate reasoning for treating the associated gift taxes as testamentary transfers.

4

Since the gift taxes are not included in the federal taxable estate, they are not included in the state taxable estate and the majority is incorrect. Ackerley's gift tax payments, fully and finally made during his life, do not qualify as transfers made at death. As a result, I would reverse the decision of the Thurston County Superior Court. Accordingly, I respectfully dissent.

Wiggins, J.

González, J.

Yu, J.

Gordon McCloud, J.

6