# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ARAMARK EDUCATIONAL SERVICES, LLC, | ) ) ) | No. 79078-1-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| STATE OF WASHINGTON, DEPARMENT OF REVENUE, | ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) ) | FILED: February 5, 2019 |

2019 FEB -5 AM 11: 18
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

VERELLEN, J. — For purposes of the Washington business and occupations (B&O) tax, if a taxpayer calculates and derives its gross proceeds from a contract based on its performance of a service, regardless of whether that service results in the sale of a tangible good, then the taxpayer does not qualify as a wholeseller under RCW 82.04.060. Because Aramark Educational Services earns its revenue from its contracts with Western Washington University and Evergreen State College (the schools) based on the number of potential dining patrons with meal plans regardless of whether any patron actually receives a meal, the Department of Revenue (Department) correctly classified Aramark's business activity as providing services rather than wholesaling.

Therefore, we affirm.

## FACTS

From 2005 through 2014, Aramark contracted with the schools to provide "dining services."[1] At issue here is classification of Aramark's gross proceeds from providing meals to dining patrons with meal plans at the schools' cafeterias and other dining venues. Aramark reported its gross proceeds under the wholesaling B&O tax classification at a tax rate of 0.484 percent[2] and paid $293,804 in taxes over nine years.

The Department completed an audit of Aramark in early 2015 and concluded that it was not a wholeseller but rather a food service management operator. Food service management operators are taxed at the catchall "services and other business activities" B&O rate of 1.5 percent.[3] By that calculation, Aramark owed an additional $813,913 in taxes.

Pursuant to RCW 82.32.180, Aramark paid the additional taxes and filed suit for a refund, contending the Department misclassified its business activity. The parties filed cross motions for summary judgment. The court denied Aramark's motion, granted the Department's, and dismissed Aramark's complaint.

---

[1] The contract with Evergreen is entitled "Dining Services Contract," Clerk's Papers (CP) at 69, and the contract with Western is entitled "Food Services Management Agreement," CP at 140. The contracts with each school are distinct, but the material terms are identical.

[2] RCW 82.04.270; WAC 458-20-119(5).

[3] RCW 82.04.290(2); WAC 458-20-119(3)(b).

Aramark appeals.

ANALYSIS

We review a summary judgment decision de novo.[4] Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[5] Material facts are those facts upon which the outcome of the litigation depends, in whole or in part.[6]

We also review the meaning of a statute de novo.[7] When interpreting statutes, we determine the legislature's intent by giving effect to the plain meaning of the statute.[8] Absent a statutory definition for a familiar legal term, it should be "'given its familiar legal meaning.'"[9] When the meaning of a tax statute is in doubt, it "must be construed most strongly against the taxing power and in favor of the taxpayer."[10] But Aramark has the burden of proving that "the

---

[4] Lamtec Corp. v. Dep't of Revenue, 151 Wn. App. 451, 456, 215 P.3d 968 (2009), aff'd, 170 Wn.2d 838 (2011).

[5] CR 56(c).

[6] Morris v. McNicol, 83 Wn.2d 491, 494, 519 P.2d 7 (1974).

[7] Estate of Ackerley v. Wash. Dep't of Revenue, 187 Wn.2d 906, 909, 389 P.3d 583 (2017).

[8] Id. at 910.

[9] Cashmere Valley Bank v. State Dep't of Revenue, 175 Wn. App. 403, 417, 305 P.3d 1123 (2013) (quoting Rasor v. Retail Credit Co., 87 Wn.2d 516, 530, 554 P.2d 1041 (1976)), aff'd, 181 Wn.2d 622 (2014).

[10] Lamtec Corp. v. Dep't of Revenue, 170 Wn.2d 838, 842-43, 246 P.3d 788 (2011) (quoting Ski Acres, Inc. v. Kittitas County, 118 Wn.2d 852, 856, 827 P.2d 1000 (1992)).

tax as paid . . . is incorrect, either in whole or in part, and to establish the correct amount of the tax."[11]

Aramark contends it is a wholeseller because it sells meals to the schools, which then resell those meals to meal plan members.

Washington's B&O tax system is "extremely broad" and "intended '"to leave practically no business and commerce free of . . . tax.'"[12] To impose this tax, the Department first identifies the business activity being undertaken and, second, determines which tax rate applies to that business activity.[13] When a business activity does not fit within one of the specifically prescribed tax rate categories, such as a "sale at retail" or a "sale at wholesale", the catchall "services and other activities" tax rate applies.[14]

A "sale at wholesale" is, in relevant part, any sale of tangible personal property that is not a sale at retail.[15] A "sale" is "any transfer of the ownership of, title to, or possession of property for a valuable consideration."[16] Neither

---

[11] RCW 82.32.180.

[12] Steven Klein, Inc. v. State, Dep't of Revenue, 183 Wn.2d 889, 896, 357 P.3d 59 (2015) (quoting Simpson Inv. Co. v. Dep't of Revenue, 141 Wn.2d 139, 149, 3 P.3d 741 (2000) (alteration in original)) (internal quotation marks omitted).

[13] Id. at 896-97 (citing RCW 82.04.220(1)).

[14] Id. at 897 (citing RCW 82.04.290(2)). Neither party contends Aramark is a retail seller when providing meals to patrons with meal plans.

[15] RCW 82.04.060(1)(a). RCW 82.04.060 provides other definitions for "sale at wholesale," but they are not germane.

[16] RCW 82.04.040(1).

chapter 82.04 RCW nor a relevant regulation defines "tangible personal property," so we look to this legal term's "'familiar legal meaning.'"[17] "Tangible personal property" is "[c]orporeal personal property of any kind; personal property that can be . . . perceived by the senses."[18] Generally, then, a sale at wholesale is any transfer of ownership, title, or possession of some kind of corporeal personal property in exchange for valuable consideration. Although "sale at retail" and "sale at wholesale" are statutory terms of art that include a wide range of services lacking any tangible goods,[19] the general rule applies outside those statutory exceptions.

Aramark contends its contracts with the schools show it is a wholeseller of meals under RCW 82.04.060 and WAC 458-20-119 (Rule 119) because it sells tangible personal property, meals, to the schools for purposes of resale to dining patrons with meal plans.[20]

---

[17] Cashmere Valley Bank, 175 Wn. App. at 417 (quoting Rasor, 87 Wn.2d at 530).

[18] BLACK'S LAW DICTIONARY 1412 (10th ed. 2014); accord, WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENG. LANGUAGE 2337 (3rd ed. 2002) (defining "tangible" as "constituting or consisting of a corporeal item capable of being appraised at an actual or approximate value").

[19] See RCW 82.04.050(2)-(9), (15)(a) (for example, janitorial services, service charges for buying tickets to professional sporting events, escort services, and green fees for playing golf are all "retail sales"); RCW 82.04.060 (defining "sale at wholesale" based on "sale at retail").

[20] E.g., Appellant's Br. at 8 ("Not only does the Western contract state that Aramark 'is to provide University with meals . . . to resell to its students, faculty, and guests,' but both universities actually do so.") (internal citations omitted); Reply Br. at 5-6 ("[B]oth universities' contracts as a whole, as well as the parties' conduct, confirm the actual substance of Aramark's wholesale

The parties here do not dispute the validity of the schools' contracts with Aramark or the meaning of either contract's terms. They disagree only about how the Department classified Aramark's business activities.

We interpret contract provisions de novo as a question of law where, as here, no extrinsic evidence is needed to interpret the contract.[21] Contract terms are given their ordinary meaning "unless the agreement clearly demonstrates a contrary intent."[22]

Both contracts state clearly and identically how Aramark calculates the rate it charges the schools: "Billings to [the schools] will be based on the number of persons [with meal plans] listed each Wednesday morning before breakfast. *No allowance will be made for meals or days which contracting patrons miss*, unless otherwise approved by [the schools] and Aramark, and partial days will be considered full days for billing purposes."[23] Using this count,

---

activities."). Aramark relies on the presence of the word "resell" in its contract with Western to argue that it must be a wholeseller. Appellant's Br. at 8. But this argument raises form over substance, and courts should not let legal determinations be controlled by the manner in which the parties contractually describe their relationship. See Rho Co., Inc. v. Dep't of Revenue, 113 Wn.2d 561, 570, 782 P.2d 986 (1989) ("Determination of an agency relationship is not controlled by" contractual descriptions.).

[21] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 85, 60 P.3d 1245 (2003).

[22] Grey v. Leach, 158 Wn. App. 837, 850, 244 P.3d 970 (2010) (citing Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504, 115 P.3d 262 (2005)).

[23] CP at 387-88 (Evergreen contract), 448-49 (Western contract) (emphasis added).

Aramark invoices the schools weekly for the amounts due from the previous week. The invoices are based solely on the number of persons with meal plans eligible to patronize a dining hall, regardless of whether they do. Thus, each school pays the same amount whether Aramark distributes a meal to everyone with a meal plan or distributes no meals at all.

This is reflected in how Aramark calculates its fees in each contract. Each contract has a rate schedule listing the cost per meal prepared.[24] The schedule varies based on the number of patrons with each type of meal plan.[25] For example, during the 2015-2016 academic year, Western paid Aramark between $16.03 and $18.84 for each person on the "unlimited" plan depending on how many members were enrolled in that plan during that given week.[26] Similarly, in 2015-2016, Evergreen paid Aramark between $16.73 and $33.69 for each person on the "all access plus" meal plan, depending on how many members were enrolled in that plan in a given week.[27]

The schools are not paying Aramark just for the meals themselves. Although food contained in a meal is a tangible good, the schools pay Aramark based only on the number of eligible meal plan patrons, whether or not any patron ever receives a meal. To be taxed as a wholeseller, Aramark must sell

---

[24] See CP at 434 (Evergreen contract), 481 (Western contract).
[25] Id.
[26] CP at 481.
[27] CP at 130.

7

tangible personal property to the schools.[28] But a wholesale sale requires transferring ownership, title, or possession of tangible personal property.[29]

Aramark is paid for the service of assisting the schools with operating and managing their meal plans. Aramark transfers tangible personal properties as part of the operation and management of the schools' meal plans by providing food to meal plan patrons who consume meals in on-campus dining facilities. But it does not receive valuable consideration for those transfers. Instead, Aramark's gross proceeds derive from its services. Because the sale of tangible personal property is not required for Aramark to be paid, Aramark is not engaged in sales at wholesale. Aramark does not contend any other B&O tax classification applies, so its business activities fall into the catchall tax rate.[30]

Aramark argues, however, that this result is inconsistent with Rule 119 because it recognizes that a company like Aramark can sell meals as a retailer, service provider, or wholeseller.[31] Rule 119(5) classifies a company as a wholeseller where it is selling meals to "persons who will be reselling the meals."[32] But, despite one contract's fleeting uses of the word "resell," the

---

[28] RCW 82.04.270; RCW 82.04.060(1)(a).

[29] RCW 82.04.040(1); RCW 82.04.060(1)(a).

[30] RCW 82.04.290(2).

[31] WAC 458-20-119(3)(a) (retail sales of meals), (3)(b) (provision of meals as a service), (5) (wholesale sales of prepared meals).

[32] WAC 458-20-119(5).

schools are selling meal plans rather than meals.[33] Aramark's role at the

schools is better reflected by Rule 119(3)(b). Rule 119(3)(b) provides an

example of a food service operation providing services, rather than making

retail sales, and it accurately describes the circumstances here:

> Food service management includes . . . :
>
>  . . . .
>
> (ii) Food service contractors managing and/or operating a cafeteria, lunch room, or similar facility for the exclusive use of students or faculty at an educational institution or private school. The educational institution or private school provides these meals to the students and faculty as a part of its educational services. The food service contractor is managing a food service operation on behalf of the institution, and is not making retail sales of meals to the students, faculty, or institution. Sales of meals or prepared foods to guests in such areas are, however, subject to the retailing B&O and retail sales taxes.[34]

---

[33] Despite Aramark's argument that "[the Department's] distinction between 'meals' and 'meal plans' is contrived and unsupported by authority," Reply Br. at 4, "meals" are distinct from "meal plans." For example, Aramark's marketing materials state it will "build[ ] a strong meal plan membership program" by "communicat[ing] all the benefits of meal plans," including that "being on a meal plan is a positive experience that benefits campus life." CP at 342. Replacing "meal plan" with "meal" in the marketing materials shows the illogic of Aramark's argument.

[34] WAC 458-20-119(3)(b)(ii). Aramark notes that it sells meals as retail sales to dining patrons without meal plans, contending application of Rule 119(3)(b) is inappropriate. But this is an entirely separate revenue source under the contracts, which the last sentence in Rule 119(3)(b) anticipates in allowing that such sales are subject to the retailing B&O tax. Thus, 119(3)(b) still applies.

For these business operations, "[t]he gross proceeds derived from the management of a food service operation are subject to the [catchall] B&O tax."[35]

The economic reality of how Aramark earns money in exchange for supporting the schools' sales of meal plans is consistent with Rule 119's distinctions between providing services in support of a campus meal plan rather than providing meals. The Department correctly relied on Rule 119(3)(b) to classify Aramark as a food service management company properly subject to the catchall B&O tax in RCW 82.04.290(2). The court properly granted the Department's motion for summary judgment.

Therefore, we affirm.

WE CONCUR:

---

[35] WAC 458-20-119(3)(b).